J-S40045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTIAN WILLIAMS | : | |
| | : | |
| Appellant | : | No. 3228 EDA 2023 |

Appeal from the PCRA Order Entered December 14, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0012462-2015

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY STABILE, J.: **FILED APRIL 14, 2025**

Appellant, Christian Williams, appeals from an order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We remand for further proceedings limited to Appellant's allegation that trial counsel was ineffective for recommending that Appellant reject the Commonwealth's offer to plead guilty in exchange for a sentence of 11½-23 months' imprisonment.

The trial court summarized the evidence against Appellant as follows:

The complainant in this case . . . was born on January 15, 2003. [The complainant] is acquainted with Appellant through her mother ("[Mother]"), who shared a romantic relationship with Appellant between 2008 and 2011. During that time, [the complainant] and [Mother] maintained their own residence but regularly stayed overnight in Appellant's home.

At trial[, the complainant] testified to several instances of sexual abuse by Appellant, which began when she was five years old and continued until she was eight. Appellant typically abused the minor at his residence in her bedroom, a room that she did not

share with anyone. [The complainant] testified that every few days, after her mother went to sleep, Appellant would enter her bedroom and rub her back and buttocks as he brushed [his] penis against her face, mouth, and chest. Appellant typically entered [the complainant's] bedroom "completely naked" and laid beside her in her bed. [The complainant] explained that during these episodes, Appellant "always tried to get [his penis] through [her] mouth."

On one occasion when [the complainant] was five or six years old, Appellant entered her room at night and penetrated her mouth with his penis. She testified that this was the only time when his penis actually penetrated her mouth and that it "only went as far as [her] teeth." She further explained that he laid next to her in her bed and "he proceed[ed] to do what he normally [did]. And I wake up, and his penis is in my mouth. I just let it happen because I was only about six years old and didn't know what to do." [The complainant] recalled the incident in great detail, explaining that she remembered it happened at night because it "was dark outside" and "dark in [her] room." She remembered that she was wearing a tank top and shorts and that [Appellant] rubbed his hand over the top of her shirt. She further explained that after he was done, her mouth "tasted different," and Appellant threatened to "tell [her] mom that [she] kn[e]w about this stuff."

On yet a different occasion, [the complainant] was watching a movie in [Mother] and Appellant's bedroom, when Appellant entered the room naked. She explicitly recalled that she had been watching the movie Baby Boy. Appellant told [the complainant] to "come here" and made her "caress . . . his penis." Specifically, Appellant made her use her hand and rub his bare penis "up and down." [The complainant] testified that [Mother] nearly walked in on the incident, but Appellant pretended to be asleep.

When [the complainant] was five years old, she disclosed the abuse to her babysitter, K.K., telling her that [the complainant] had "sucked [Appellant's] dick." K.K. promptly notified Appellant and [Mother] of [the complainant's] allegations. [Mother] responded by beating the [complainant] with a broom. [Mother] beat [the complainant] with such force that the broom broke and caused [the complainant] to sustain a bloody nose. [The complainant] testified that this incident scared her and prevented

her from telling anyone else about the abuse until four years later when she was twelve years old.

In 2015, [the complainant] disclosed the abuse to her maternal aunt. Emi Dicriscio, a representative from the Department of Human Services ("DHS"), testified that DHS was eventually informed of the abuse in April of 2015. DHS, Philadelphia Children's Alliance [(PCA)], and the Philadelphia Special Victims Unit conducted an investigation, and Appellant was arrested on October 29, 2015.

Trial Court Opinion, 4/14/21, at 4-6 (citations to record omitted).

A jury found Appellant guilty of involuntary deviate sexual intercourse with a child ("IDSI"), unlawful contact with a minor, endangering the welfare of children ("EWOC"), corruption of minors, and indecent assault of a person less than thirteen years of age. On May 21, 2018, the court sentenced Appellant to 10-20 years' imprisonment for IDSI, a concurrent term of 2½-5 years' imprisonment for unlawful contact of a minor, a consecutive term of seven years of sex offender's probation for EWOC, and concurrent terms of probation for his other offenses.

On May 31, 2018, Appellant filed a post-sentence motion arguing that the evidence was insufficient to sustain the verdict, that the verdict was against the weight of the evidence, and that his "sentence was unreasonable." Post-Sentence Motions, 5/31/2018. The court denied Appellant's motion.

On May 21, 2019, Appellant filed a timely PCRA petition alleging that trial counsel was ineffective for failing to file a direct appeal. On December 19, 2019, the PCRA court dismissed Appellant's petition. Appellant timely appealed to this Court. On October 21, 2020, the PCRA court issued an

opinion requesting that this Court remand the case for reinstatement of Appellant's direct appeal rights *nunc pro tunc*. On January 19, 2021, this Court ordered that Appellant was entitled to reinstatement of his direct appeal rights and remanded the case. Appellant filed a timely notice of appeal.

On direct appeal, this Court affirmed Appellant's judgment of sentence. On June 27, 2022, our Supreme Court denied allowance of appeal.

On August 9, 2022, Appellant filed a timely *pro se* PCRA petition. Through counsel, Appellant subsequently filed an amended PCRA petition. On November 16, 2023, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the PCRA petition without a hearing. On December 18, 2023, the PCRA court dismissed the petition. Appellant filed a timely notice of appeal. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal, which we re-order for purposes of convenience:

> 1. Trial counsel provided ineffective assistance of counsel for failing to properly advise Appellant concerning the plea offer.
>
> 2. Trial counsel provided ineffective assistance of counsel for failing to file a post-sentence motion to reconsider Appellant's excessive sentence.
>
> 3. Trial counsel was ineffective for failing to adequately cross-examine witnesses, to call witnesses and present evidence at trial that Appellant requested, and for failing to adequately prepare for trial and confer with the Appellant.
>
> 4. The PCRA court erred in denying Appellant's PCRA petition without an evidentiary hearing on the issues presented in the amended PCRA petition.

Appellant's Brief at 7.

On appeal from an order in a post-conviction matter, "our standard of review requires us to consider whether the PCRA court's factual findings are supported by the record and free of legal error." ***Commonwealth v. Thomas***, 323 A.3d 611, 620 (Pa. 2024). "A PCRA court's credibility determinations, when supported by the record, are binding on an appellate court but its legal conclusions are reviewed *de novo*." ***Id.***

A PCRA petitioner has the burden to "plead and prove" ineffective assistance of counsel "by a preponderance of the evidence." 42 Pa.C.S.A. § 9543(a). "Counsel is presumed to be effective and it is a petitioner's burden to overcome this presumption by a preponderance of the evidence." ***Thomas***, 323 A.3d at 620. "To succeed on a claim of ineffective assistance of counsel, a petitioner must establish three criteria: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable basis for his or her action or inaction; and (3) that petitioner was prejudiced as a result of the complained-of action or inaction." ***Id.*** at 620-21. "The failure to satisfy any one of these criteria is fatal to the claim." ***Id.*** at 621. "To establish prejudice in the context of this standard, a petitioner must establish that there is a reasonable probability that the result of the proceeding would have been different but for the complained-of conduct." ***Id.***

In his first claim of ineffective assistance, Appellant claims that he was not "properly advised of the advantages and disadvantages of rejecting [a]

plea deal and was given faulty advice by counsel about going to trial."

Appellant's Brief at 17. Appellant claims that the Commonwealth conveyed a

offer that Appellant plead guilty to the charges in return for an aggregate term

of 11½-23 months' imprisonment, but trial counsel convinced him to go to

trial. Appellant asserted in the memorandum accompanying his amended

PCRA petition:

> Trial counsel was ineffective for failing to adequately explain the
> advantages of the [Commonwealth's] guilty plea offer of 11½ to
> 23 months of incarceration. Counsel's ineffectiveness resulted in
> [Appellant's] rejection of the offer, [Appellant] being found guilty
> at trial, and [Appellant] receiving a severely greater sentence.
> Counsel communicated the [Commonwealth's] plea deal of 11½
> to 23 months [of imprisonment] to [Appellant] and stated that if
> he lost at trial that he would be facing 6½ to 12 years [of
> imprisonment]. Prior to [trial counsel] entering [his] appearance
> for [Appellant], a public defender conveyed a plea deal to
> [Appellant] for 6½ to 12 years [of imprisonment] which
> [Appellant] rejected. [Appellant] contends that he asked [trial
> counsel], "[I]f the D.A. went from 6½ to 12 years to 11½ months
> to 23 months [of imprisonment,] shouldn't I be able to win this
> case if they keep reducing the time?" [Appellant] states that in
> response, [trial counsel] said "[Y]es, because I can prove that [the
> complainant] doesn't know what she's talking about at trial
> through simple questioning and confuse her in her testimony on
> the stand." [Appellant] contends that [trial counsel] informed him
> that the trial would be before Judge Cunningham and reassured
> him that it would be an easy win because he "went way back with"
> the judge. [Appellant] further contends that when the trial was
> scheduled before Judge Lane, Mr. Sago! instructed him to "play
> sick" in order to get the trial postponed until it could be in front of
> Judge Cunningham.

Memorandum In Support Of Amended Petition [For PCRA] Relief, 2/8/23, at

15-16. Appellant further asserted:

> In **Lafler v. Cooper**, 566 U.S. 156, 162 (2012), the United States
> Supreme Court held that the constitutional right to effective

counsel extends to the plea-bargaining stage. The Court held that defendants have an enforceable right to competent legal advice during a plea negotiation. *Id.* at 163. The Court explained that there is a two-part test applied in determining whether a defendant was denied effective assistance during the plea negotiations. The performance prong of ***Strickland v. Washington***, 466 U.S. 668, 688 (1984), requires a defendant to show that "counsel's representation fell below an objective standard of reasonableness." For example, counsel's representation falls below an objective standard of reasonableness if but for ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the plea would not have been withdrawn by the prosecution. ***Missouri v. Frye***, 566 U.S. 134, 148 (2012). In [Appellant's] case, if he was given competent advice about his plea deal, he would have accepted it. There is nothing to indicate that the prosecution would have revoked the offer. Furthermore, the advice that [trial counsel] gave to [Appellant] fell below an objective standard of reasonableness because insinuating that he would win a case because of a personal relationship with a judge is unethical, unprofessional, and inadequate legal advice. Counsel's ineffectiveness in advising [Appellant] to go to trial on baseless grounds caused [Appellant] to overlook a punishment that would have been less severe than the sentence that was in fact imposed upon him.

*Id.* at 16-17.

The Commonwealth contends that there is no evidence of record that it conveyed an offer of 11½-23 months' imprisonment. The Commonwealth argues that the record shows that it made only one guilty plea offer of 6½-13 years' imprisonment on January 19, 2016. Smart Room Offer Sheet (sealed), 1/19/16 (document 0007 in Sensitive Documents file of certified record). The offer sheet stated that this was the "lowest offer [Appellant] will receive" and added that he would be subject to state-supervised sex offender probation and a required Megan's law evaluation. *Id.* Appellant rejected this offer on

the day he received it. *Id.*; *see also* Appellant's Amended PCRA Petition, ¶ 4 (Appellant's admission that he rejected Smart Room offer sheet).

Even though the only offer in the record was 6½-13 years' imprisonment, we conclude that Appellant raises a question of fact as to whether the Commonwealth extended another offer of 11½-23 months' imprisonment. Although this alleged offer is not in the record, it remains possible that the Commonwealth made an offer of 11½-23 months that never became part of the record. If the Commonwealth actually made this offer, and trial counsel actually convinced Appellant to reject it, Appellant might be entitled to PCRA relief on the ground that counsel was ineffective for failing to recommend acceptance of the offer.

We conclude that Appellant is entitled to an evidentiary hearing on this issue. We express no opinion on whether Appellant's claim is credible or whether, if proven, it entitles Appellant to PCRA relief.

Although we will remand for further proceedings, we take this opportunity to address the other issues raised by Appellant in this appeal. Appellant argues that trial counsel was "ineffective for failing to file a motion for reconsideration of sentence." Appellant's Brief at 19. The record demonstrates, however, that trial counsel filed a post-sentence motion that claimed that his "sentence was unreasonable in light of all the circumstances presented." Appellant's Post-Sentence Motion, ¶ 5, 5/31/18. Moreover, Appellant's sentence was reasonable. As the PCRA court observed, Appellant

- 8 -

had a prior record score of one due to ten previous arrests (nine of which were related to domestic violence), and his offense gravity score for both IDSI and unlawful contact with a minor was fourteen. Notice Of Intent To Dismiss Appellant's PCRA Petition Without Hearing, 11/16/23, at 6 (citing N.T. 5/21/18, at 12-14 (sentencing hearing)); **see also** N.T., 5/21/18, at 5-6. Appellant's guideline sentence for both IDSI and unlawful contact was 84 months to the statutory limit, plus or minus twelve months. N.T., 5/21/18, at 5-6; 204 Pa. Code §§ 303.15-303.16 (Sentencing Guidelines). The court sentenced Appellant to an aggregate term of 12½-25 years' imprisonment, followed by seven years' probation, below the suggested guidelines of 14-28 years' imprisonment. The record shows that the court reviewed the presentence investigation, the Commonwealth's sentencing memorandum, letters in support of Appellant, the Commonwealth's and Appellant's arguments at sentencing, and the testimony of Appellant, his sister, and his mother before making its decision. N.T., 5/21/18, at 6, 26. Thus, the PCRA court properly rejected this claim of ineffective assistance for lack of arguable merit.

Next, Appellant claims that trial counsel failed to adequately cross-examine Ms. Grant-Morrow, the complainant's mother, because counsel failed to emphasize Appellant's theory that "the allegations against him were made up" in order for Grant-Morrow to "get back at him" for their "on and off again

relationship." Appellant's Brief at 20. The PCRA court properly rejected this claim.

Appellant's claim that Grant-Morrow "made up" allegations to "get back at" Appellant fails because Grant-Morrow did not accuse Appellant of sexual misconduct. Grant-Morrow never testified that she believed the complainant's allegations were true. N.T., 1/17/18, at 99–131 (Grant-Morrow's trial testimony). When asked about where the complainant was living when she made the allegations to DHS, Grant-Morrow responded, "When false allegations were being made through the Department of Human Services at times, yes. She was living with me," and "At the time I didn't know what to believe at the time, no. Because my daughter was very troubled at the time." *Id.* at 132–34.

Appellant seems to believe that counsel should have exposed that Grant-Morrow had a motive to encourage the complainant to fabricate allegations against Appellant due to her "on and off relationship" with Appellant. The testimony of record, however, adequately established the complexity of their relationship. Both Grant-Morrow and Appellant testified about their "on and off" relationship and the fact that Appellant "was in different relationships" with other women between 2008 and 2011. N.T., 1/17/18, at 110 (Grant-Morrow); N.T., 1/18/18, at 52–59 (Appellant). Grant-Morrow also said that at one point she wanted to marry Appellant but that "[Appellant] was never leaving his woman, so I really had to move on." N.T.,

1/17/18, at 129. Additional cross-examination regarding any ill will Grant-Morrow may have had towards Appellant because of their "complex" relationship would have been cumulative. **See Commonwealth v. Spotz**, 896 A.2d 1191, 1229 (Pa. 2006) ("a defendant is not prejudiced by the failure of counsel to present merely cumulative evidence").

Next, Appellant argues that trial counsel failed to present evidence upon his request that would have demonstrated that he maintained contact with Grant-Morrow while he was on house arrest, that Grant-Morrow did not believe the complainant's allegations, and that he was often absent from the home during the timeframe that he sexually abused the complainant. Appellant's Brief at 21–22. Appellant fails to demonstrate that there is a reasonable probability that the admission of this evidence would have resulted in a more favorable outcome.

Evidence regarding Appellant's favorable relationship with Grant-Morrow while he was on house arrest would not have been relevant, because it had no tendency to prove a fact material to Appellant's guilt. **See Commonwealth v. Spiewack**, 617 A.2d 696, 699 (Pa. 1992) ("[e]vidence if relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact"). This evidence only would have demonstrated that Appellant and Grant-Morrow stayed in contact after the allegations, which was not an issue at trial. In fact, evidence

of Appellant's favorable relationship with Grant-Morrow would contradict his previous claim that Grant-Morrow influenced the complainant to fabricate the allegation to "get back at him." Appellant's Brief at 20.

Any evidence demonstrating that Grant-Morrow did not believe the complainant's allegations was already implicit in her testimony. N.T., 1/17/18, at 133) (Grant-Morrow's testimony that "[a]t that time I didn't know what to believe at that time, no. Because my daughter was very troubled at the time").

Lastly, none of the alleged evidence would have corroborated Appellant's testimony that he was "never left alone" with the complainant. The complainant testified that Appellant sexually abused her repeatedly over a three-year period. N.T., 1/17/18, at 40–53. Evidence that Appellant was at work, at school, or at another woman's house does not demonstrate that he was "never left alone" with the complainant during this lengthy time period.

Accordingly, none of this alleged evidence had a reasonable probability of producing a more favorable outcome at trial.

Appellant also claims trial counsel was ineffective for failing to call witnesses. Appellant's Brief at 21. In order to succeed on a claim of ineffectiveness based on counsel's failure to call a potential witness, a Appellant can only satisfy the performance and prejudice prongs by establishing: (1) the witness existed, (2) the witness was available to testify, (3) counsel knew of, or should have known of, the existence of the witness,

(4) the witness was willing to testify, and (5) the absence of the testimony was so prejudicial as to have denied Appellant to a fair trial. ***Commonwealth v. Washington***, 927 A.2d 586, 599 (Pa. 2007).

Furthermore, the PCRA provides:

(i) Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony.

(ii) If a petitioner is unable to obtain the signature of a witness under subparagraph (i), the petitioner shall include a certification, signed by the petitioner or counsel, stating the witness's name, address, date of birth and substance of testimony. In lieu of including the witness's name and address in the certification under this subparagraph, counsel may provide the witness's name and address directly to the Commonwealth. The certification under this subparagraph shall include any documents material to the witness's testimony and specify the basis of the petitioner's information regarding the witness and the petitioner's efforts to obtain the witness's signature . . .

(iii) Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

42 Pa.C.S.A. § 9545(d).

Attached to Appellant's amended PCRA petition was his signed statement that he gave a list of witnesses who either were character witnesses or who "knew the accusations were false and wanted to testify and help." Appellant, however, failed to satisfy Section 9545(d)(1), because he failed to attach the signed certification of any witness indicating that he or she was willing and available to testify and specifying the substance of his or her

testimony. Nor did Appellant's signed statement satisfy Section 9545(d)(2), since he failed to provide any witness's address, date of birth, proposed testimony, or documents material to this testimony. Nor did Appellant's signed statement identify his efforts to obtain any witness's signed statement. Therefore, the PCRA court correctly concluded that Appellant failed to plead or prove that trial counsel was ineffective by failing to call witnesses.

Next, Appellant makes the general allegation that trial counsel did not adequately prepare for trial or confer with Appellant prior to trial. This claim is undeveloped and thus meritless. To prevail on an unpreparedness claim, the petitioner must "alleg(e) beneficial information or issues that counsel should have presented had he been prepared adequately, which would have changed the outcome of the trial." **Commonwealth v. Elliot**, 80 A.3d 415, 432 (Pa. 2013) (reversing grant of PCRA relief because defendant "fail(ed) to identify what [alleged] evidence existed or explain how such evidence supported his defense").

Appellant's claims of unpreparedness fail because, as set forth above, none of his claims of trial error or of the absence of witnesses or evidence would have led to a different result at trial. Furthermore, Appellant's claim of unpreparedness contradicts his admission in his amended PCRA petition that "in the preparation of his defense he had many meetings with counsel, both in the county prison and at counsel's office." Amended PCRA Petition, 2/8/23, at 22.

Finally, Appellant contends that the PCRA court erred in denying Appellant's PCRA petition without an evidentiary hearing on the issues presented in the amended PCRA petition. This issue is moot in view of our decision to remand for further proceedings on the Commonwealth's alleged offer of 11½-23 months' imprisonment in return for Appellant's guilty plea.

For these reasons, we vacate the order denying PCRA relief and remand for further proceedings limited to Appellant's allegation that trial counsel was ineffective for recommending that Appellant reject a plea offer of 11½-23 months' imprisonment.

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Lane did not participate in the consideration or decision of this case.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/14/2025